**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

FILED

00 OCT 18 AM II: 27

U.... ..... ...... ......
N.D OF ALABAMA

| | | |
|---|---|---|
| PROGRESS RAIL SERVICES CORPORATION, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No.: CV-00-S-2367-NE |
| DONOVAN DEMOLITION, INC., and JOHN L. DONOVAN, | ) | |
| Defendants. | ) | |

ENTERED

OCT 18 2000

**MEMORANDUM OPINION**

This action is before the court on defendants' motions to dismiss for lack of personal jurisdiction or, in the alternative, for transfer of venue.[1]  Upon consideration of the pleadings, briefs, and oral arguments of counsel, the court finds that both aspects of the motions are due to be denied.

### I. STANDARD OF REVIEW

When ruling upon a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction in the absence of an evidentiary hearing,

> the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all

---

[1] Separate motions were filed by John L. Donovan (doc. no. 5) and Donovan Demolition, Inc. (doc. no. 6).



reasonable inferences in favor of the plaintiff.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted); *see also, e.g.*, *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

## II. FACTUAL BACKGROUND

Jurisdiction of this action is premised on the parties' diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332(a)(1).   Plaintiff, Progress Rail Services Corporation, is an Alabama corporation with its principal place of business in Albertville, Alabama.   Defendants are Donovan Demolition, Inc. ("DDI"), an Illinois corporation with principal place of business in Danvers, Illinois, and DDI's president, John L. Donovan ("Donovan"), who also is a resident of Illinois.

Plaintiff loaned DDI $250,000 during April of 1997.   As consideration, DDI executed and delivered a promissory note providing that DDI would repay the $250,000 advanced by plaintiff (plus interest at the rate of 6% per annum) in four quarterly installments.   Each payment was to be mailed to plaintiff at its principal place of business in Albertville, Alabama.   The note included a choice of law clause, stating that its provisions were to be construed in accordance with the laws of the State of

2

Alabama.   The note was secured by two additional instruments:   a security interest in equipment owned by DDI (identified as "One Rockford Mill - Serial No. 120RM61 including all attachments and improvements now existing or hereafter made") and a personal guaranty agreement executed by Donovan.

Plaintiff and DDI subsequently entered into discussions regarding the acquisition of DDI by plaintiff.   During the course of negotiations, plaintiff advanced an additional $750,000 to DDI. According to the terms of a letter of agreement dated December 14, 1998, the $750,000 advance would be deducted from the purchase price, in the event plaintiff acquired DDI; if the acquisition did not occur, however, then the money was to be repaid in specified phases.[2]  As collateral for the advance, DDI offered plaintiff 10% of its corporate stock and the patent rights to a "detonation containment chamber."

Plaintiff and DDI ceased negotiations for the acquisition of the latter company by the former during March of 1999.   DDI attempted to repay the $750,000 cash advance, but it still owes plaintiff about $400,581.93 plus interest.

DDI has since accepted a series of purchase orders issued by

---

[2] DDI was obligated to repay $250,000 on or before March 31, 1999.   The remaining $500,000 plus 8% interest was to be repaid in nine monthly installments of $60,000 each.

3

plaintiff, and entered into a course of dealing with plaintiff.

As previously noted, DDI's principal place of business is located in Danvers, Illinois. The corporation has not qualified to conduct business activities in Alabama. It has no office, employee, or agent in the State. The equipment described in the security agreement for the initial loan is located in Illinois. Donovan personally resides in Illinois, and he did not travel to the State of Alabama during the course of any dealings forming the basis of this action. Rather, all transactions and negotiations at issue here occurred by telephone, mail, and during meetings in Illinois.

On the other hand, the original promissory note, the security agreement, Donovan's personal guaranty agreement, and the parties' letter of agreement were prepared in Alabama. Plaintiff negotiated the transactions in part from its principal place of business in Albertville, Alabama. The cash advances were sent from Alabama, and all repayments were mailed by defendants from Illinois to plaintiff in Alabama.

### III. DISCUSSION

#### A.   Personal Jurisdiction

The determination of personal jurisdiction over a nonresident defendant is a two-step analytical process. First, a federal

district court sitting in diversity must address the forum state's
long-arm statute.  Second,

> [i]f there is a basis for the assertion of personal
> jurisdiction under the state statute, [the district court
> must] next determine whether sufficient minimum contacts
> exist to satisfy the Due Process Clause of the Fourteenth
> Amendment so that "maintenance of the suit does not
> offend 'traditional notions of fair play and substantial
> justice.'" Only if both prongs of the analysis are
> satisfied may a federal or state court exercise personal
> jurisdiction over a non-resident defendant.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir.

1996) (citations omitted) (quoting *International Shoe Co. v.*

*Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95

(1945)).

### 1.   The reach of Alabama's long-arm provision

"Alabama permits its courts to exercise jurisdiction over

nonresidents to the fullest extent allowed under the Due Process

Clause of the Fourteenth Amendment to the Constitution." *Ruiz de*

*Molina v. Merritt & Furman Insurance Agency, Inc.*, 207 F.3d 1351,

1355-56 (11th Cir. 2000) (citing Ala. R. Civ. P. 4.2(a)(2)(I)[3]; *see*

---

[3] Rule 4.2(a)(2)(I) of Alabama Rules of Civil Procedure provides, in
pertinent part:

> (2) Sufficient Contacts. A person has sufficient contacts with
> the state when that person, acting directly or by agent, is or may
> be legally responsible as a consequence of that person's:
>
> . . .
>
> (I) otherwise having some minimum contacts with this state

*also Investors Guaranty Fund, Ltd. v. Compass Bank*, __ So. 2d __, 2000 WL 1310501 (Ala. Sept. 15, 2000); *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993); *Horn v. Effort Shipping Co., Ltd.*, 777 F. Supp. 927, 929 (S.D. Ala. 1991)). Alabama's long arm statute is "not limited to rigid transactional categories." *Alabama Waterproofing Co., Inc. v. Hanby*, 431 So. 2d 141, 145 (Ala. 1983). The Alabama Supreme Court utilizes a two-part test to determine whether to exercise personal jurisdiction over a nonresident defendant: (1) "whether it is foreseeable to that nonresident defendant that he will be sued in this state"; and (2) "the degree of contact that the nonresident defendant has with this state." *Keelean v. Central Bank of the South*, 544 So. 2d 153, 156-157 (Ala. 1989).

Under Alabama law, it is foreseeable that a nonresident guarantor of an Alabama contract would be held liable in an Alabama court. In *Alabama Waterproofing Co., Inc. v. Hanby*, 431 So.2d 141 (Ala. 1983), the Alabama Supreme Court upheld the trial court's exercise of personal jurisdiction over nonresident guarantors.

---

and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), <u>so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States.</u>   [Emphasis supplied.]

Alabama Waterproofing was a closely held corporation.  *Id*. at 142.
Some of the shareholders decided to sell their stock.   *Id*. The
contract providing for the sale required the sellers and their
spouses to sign guaranty agreements securing the performance of a
non-compete agreement.  *Id*.  Three of the spouses were residents of
Mississippi and signed the guaranty agreements in Mississippi.  The
Court found:

> Irrespective of the singular fact that the nonresident
> appellants actually signed the guaranty in Mississippi,
> the Court is of the opinion that the trial court could
> have found that the guaranty signed by each appellant was
> a significant aspect of the negotiations which occurred
> in Alabama and that it was foreseeable that appellants'
> transaction would have consequences in this state.
> Furthermore, based on the facts as presented, it is quite
> evident that the trial court could have found that the
> nonresident appellants had good reason to expect to be
> sued in an Alabama court in the event Alabama
> Waterproofing failed to fulfill its obligations to
> appellees....
>
> . . .
>
> The Court finds that although the nonresident
> appellants signed the guaranty in Mississippi,
> nevertheless, the guaranty was negotiated in Alabama, the
> guaranty guaranteed the performance on an Alabama
> Corporation, and the trial court's findings that it was
> reasonably foreseeable that if the guarantors breached
> their agreement that they could reasonably anticipate
> being haled into an Alabama court are supported by the
> record on appeal.

*Id*. at 145-146 (citations omitted).

The Alabama Supreme Court again addressed personal

7

jurisdiction over nonresident guarantors in *Keelean v. Central Bank of the South*, 544 So.2d 153 (Ala. 1989).  Robert Keelean was one of the guarantors on a promissory note negotiated by telephone between Holdco, a Florida corporation, and Central Bank, an Alabama banking corporation.  *Id.* at 154.  The guaranty agreement contained a clause designating Alabama as the appropriate governing law and the appropriate forum for any disputes.  *Id.* at 155.  Holdco defaulted on the note and Central Bank of the South instituted proceedings in Alabama against the guarantors.  *Id.*  Keelean, the nonresident defendant, argued that the mere signing of guarantees for the payment of a loan did not make his being haled into Alabama court foreseeable, and that his relationship to Holdco as guarantor was not a sufficient contact with Alabama.  *Id.* at 157.  The Alabama Supreme Court found:

> It appears from the record that all guarantors were aware that they were guaranteeing payment of the debts and liabilities of a Florida corporation that was borrowing $4,000,000 from an Alabama corporation.  It is quite foreseeable that upon the default of that loan, they would be held accountable on their contracts of guaranty in the State of Alabama. ... [W]e determine that clearly the appellants/guarantors should have foreseen the effects of their contracts of guaranty in the State of Alabama in the event of a default of the promissory note. A clear and firm connections exists between the execution of the promissory note, the subsequent default, the contracts of guaranty, and this litigation.

John Donovan contends that under *Delro Industries, Inc. v. Evans*, 514 So. 2d 976 (Ala. 1987), this court does not have personal jurisdiction over him.  In *Delro*, the Alabama Supreme Court held that a  Massachusetts court did not have personal jurisdiction over an Alabama resident who entered into a guaranty agreement with a Massachusetts corporation with respect to a suit over a breach of the guaranty agreement.  The defendant in *Delro* was a resident of Alabama who had executed the subject guaranty agreement in Florida.  He did make three trips to Massachusetts, but each visit was unrelated to the guaranty agreement.  The Alabama Supreme Court refused to give full faith and credit to the Massachusetts court's default judgement against the defendant, holding that the Massachusetts court did not have personal jurisdiction over the defendant.  The contacts with Massachusetts did not create sufficient "minimum contacts," because they were unrelated to the claim at issue.

The *Delro* decision is, however, overshadowed by the Alabama Supreme Court's holding in *Ex parte Lord & Son Construction, Inc.*, 548 So. 2d 456 (Ala. 1989).  In that case, a Florida subcontractor, State Electric Service, contracted with a general contractor, Lord & Son, to perform the electrical work on a construction project in

Florida.  *Id.* at 456.   State Electric Service was located in Florida, and Lord & Son was incorporated in Florida.  *Id.*  Alabama Electrical Wholesalers, an Alabama corporation, supplied the materials for the electrical work.  *Id.*  State Electric Service arranged to have Lord & Son make payment checks jointly payable to it and to Alabama Electrical Wholesalers until the project was fully paid.  *Id.*  Pursuant to the agreement, Lord & Son issued several jointly payable checks, but issued the final check as payable only to State Electric Service. *Id.* at 457.  Alabama Electrical Wholesalers sued Lord & Son in Alabama for breach of its agreement with State Electric Service.  *Id.*  Lord & Son moved to dismiss for lack of personal jurisdiction, arguing that it had no corporate office in Alabama, did not advertise or solicit business in Alabama, and had no bank account or mailing address in Alabama. *Id.*  It further argued that there was no agreement.  The Alabama Supreme Court found that there was an implied contract between State Electric Service and Lord & Son for the benefit of Alabama Electrical Wholesalers.  Furthermore, the court found:  "These actions by Lord & Son are sufficient indications that it could reasonably have anticipated being sued in Alabama." *Id.*  The court upheld the trial court's exercise of personal jurisdiction over the

nonresident defendant even though that defendant's only contact with Alabama was with the third party beneficiary of an implied contract.  The majority did not expressly mention *Delro*, but Chief Justice Hornsby's concurrence questioned the viability of the case:

> Petitioner [Lord & Son] cites *Delro Industries, Inc. v. Evans*, in support of [its] claim.  In *Delro*, this Court did hold that Massachusetts did not have personal jurisdiction over an Alabama resident who entered into a guaranty agreement with a Massachusetts corporation with respect to a suit over the breach of the guaranty agreement.  We have long held that our long arm rule extends as far as constitutionally permissible.  In light of the decisions in *Burger King* and in this case, the validity of *Delro* is called into grave doubt.

*Id*. at 458 (citations omitted).  The decisions in *Keelean*, *Alabama Waterproofing*, and *Lord & Son Construction* lead this court to conclude that *Delro* is an anomaly.

This case is most analogous to *Keelean*.  Here, Donovan, a nonresident defendant, guaranteed a promissory note issued by an Alabama Corporation.  As president of DDI, Donovan had knowledge of all negotiations pursuant to the note.  He knew that he was dealing with an Alabama corporation when he signed the personal guaranty.  The promissory note Donovan guaranteed contained a clause designating Alabama law as controlling.  There is a "clear and firm connection" between the execution of the promissory note, DDI's subsequent default, Donovan's guaranty, and this litigation.

11

Because it was foreseeable that Donovan would be held liable in an Alabama court, and because Donovan's contacts with Alabama are related to plaintiff's claims for breach of his personal guaranty agreement, this court finds John Donovan is subject to personal jurisdiction according to Alabama's long-arm statute.

It also is foreseeable that a nonresident obligor on a promissory note issued by an Alabama entity would be held liable in an Alabama court. In *Ex parte AmSouth Bank, N.A.*, 675 So. 2d 1305 (Ala. 1996), the Alabama Supreme Court held that a nonresident borrower is subject to the jurisdiction of Alabama's courts when he is sued by an Alabama lender to recover on a promissory note. In that case, L.R. Lindsey, a Texas resident, executed a promissory note in favor of AmSouth in consideration of a $70,000 loan. *Id.* The note was executed in Texas, but it included a choice of law clause designating Alabama law as controlling. *Id.* Loan payments were to be made semi-annually to AmSouth at its address in Birmingham, Alabama. *Id.* Lindsey sent nine payments, but then defaulted. *Id.* AmSouth brought an action in Alabama to recover on the note. Lindsey contended that the Alabama courts did not have personal jurisdiction over him because he did not know that Alabama was AmSouth's primary place of business. *Id.* at 1308-09. The

12

Alabama Supreme Court held, however, that Lindsey, the nonresident defendant, was subject to the jurisdiction of Alabama courts. First the court noted that was is likely that Lindsey, as the obligor on the note, initiated the contact. *Id.* Then the court analyzed foreseeability and the degree of contact:

> Also significant in this connection is the fact that the nonresident party here was the original obligor on the note, rather than a mere guarantor, as was the case in Keelean, where we stated: "It is easily conceivable that the primary obligor (Holdco) could reasonably anticipate being called to defend itself in this state, from which it utilized its economic resources. The Note also declared that it should "be governed by and construed in accordance with the laws of the State of Alabama." Under these facts, Lindsey should reasonably have foreseen that his default on the note would require him to defend an action in Alabama.

*Id.* (footnotes and citations omitted).

Likewise, it should have been foreseeable to DDI that it could be haled into an Alabama court. DDI accepted loans from an Alabama corporation totaling $1,000,000. In consideration of these loans, DDI signed a promissory note and a letter of agreement. The promissory note for the initial, $250,000 loan explicitly states: "This note shall be governed by, and construed in accordance with, the laws of the State of Alabama." (Complaint (doc. no. 1) Ex. A.) DDI cannot argue that it did not know that plaintiff was an Alabama corporation. Indeed, DDI was nearly acquired by plaintiff.

Moreover, the promissory note and the letter of credit create a direct and sufficient nexus to the State of Alabama. This contractual relationship was not a one-time purchase of goods. The promissory note for the initial, $250,000 loan created a one-year relationship. The letter of agreement pursuant to the $750,000 cash advance was signed in contemplation of a permanent relationship between DDI and plaintiff. When the acquisition failed to come to fruition, the cash advance became a loan that was to be repaid over a one year period. Furthermore, all payments were to be sent to Alabama. Because DDI deliberately tapped the economic resources of the State of Alabama, and because it was entirely foreseeable that DDI would be held accountable in Alabama in the event of default, this court finds that DDI is properly subject to the jurisdiction of the courts of the State of Alabama pursuant to Alabama's long-arm statute.

### 2.   The permissible expanse of the Due Process Clause

The determination of whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment also is a two-part inquiry. "First, we must decide whether each defendant has established 'minimum contacts' with [the forum state]. Second, we must determine whether the exercise of personal jurisdiction would offend 'traditional notions of fair play and

14

substantial justice.'"   *Robinson*, 74 F.3d at 258 (citations and some quotation marks omitted)'.  The Eleventh Circuit described the two prongs of this inquiry in the following manner.

1.   Minimum contacts

Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign.   ...   This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum ... and the litigation results from alleged injuries that "arise out of or relate to" those activities.  ...

Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there.  ... However,

> the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.... [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

This requirement assures that a defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts ... or because of the unilateral activity of a third person.  ... Jurisdiction is proper where the defendant's contact with the forum proximately result from actions by the defendant himself that create a "substantial connection" with the forum state.  ...  Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical to the proper exercise of

personal jurisdiction is not the ability to see that the
acts of third persons may affect the forum, but rather
that the defendant's own purposeful acts will have some
effect in the forum.  ...

2.   Fair Play and Substantial Justice

        Once it has been determined that the nonresident
defendant has purposefully established minimum contacts
with the forum such that he should reasonably anticipate
being  haled  into  court  there,  these  contacts  are
considered in light of other factors to decide whether
the assertion of personal jurisdiction would comport with
"fair play and substantial justice."  ...  These other
factors are the burden on the defendant in defending the
lawsuit, the forum state's interest in adjudicating the
dispute, the plaintiff's interest in obtaining convenient
and effective relief, the interstate judicial system's
interest in obtaining the most efficient resolution of
controversies and the shared interest of the states in
furthering fundamental substantive social policies.  ...
Minimum  requirements  of  "fair  play  and  substantial
justice"  may  defeat  the  reasonableness  of  asserting
personal  jurisdiction  even  if  the  defendant  has
purposefully  engaged  in  forum  activities.     ...
Conversely, these considerations may serve to establish
the reasonableness of jurisdiction upon a lesser showing
of minimum contacts than would otherwise be required.
...

*Id.* at 258-59 (quoting *Madara*, 916 F.2d at 1516-17 (citations and

footnoted omitted)).

        In summary, when a nonresident person or entity purposefully

avails himself (or itself) of the laws of the forum state, courts

sitting  within  that  state  are  entitled  to  assert  specific

16

jurisdiction over that party.[4]  Thus, a forum state does not exceed

its Constitutional reach when it asserts specific jurisdiction over

interstate contractual obligations.   "[P]arties who 'reach out

beyond one state and create continuing relationships with citizens

of another state' are subject to regulation and sanctions in that

other State for the consequences of their activities."  *Burger King*

*Corp*. *v*. *Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85

L.Ed.2d 528 (1985).  Moreover, these contacts need not be physical.

"Jurisdiction in these circumstances may not be avoided merely

because the defendant did not physically enter the forum State."

*Id*. at 476, 105 S.Ct. at 2184.

The only conduct relevant to the minimum contacts analysis is

defendants' conduct.  Here, defendants have minimum contacts with

the State of Alabama sufficient for this court to exercise personal

jurisdiction over them because they purposefully entered into

multiple, lengthy contractual relationships with plaintiff, an

Alabama resident.  The promissory note binding DDI provides for a

one year payment schedule.  The guarantee signed by Donovan

specifically references the promissory note.  The second loan of

---

[4]Specific jurisdiction arises only from contacts related to the cause of action.  In contrast, general jurisdiction arises from frequent contacts that are unrelated to the litigation.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 9, 104 S.Ct. 1868, 1872, n. 9, 80 L.Ed. 2d 404 (1984).

$750,000 also provides for a one year repayment period.

Another factor indicating minimum contacts is the choice of law clause contained in the first loan, designating the law of Alabama as controlling.   It provides substantial evidence that defendants should reasonably have anticipated being haled into court in Alabama.

Defendants received substantial benefits from their business transactions with plaintiff.   It is foreseeable that the harm arising from a breach of these contracts would be sustained by plaintiff at its primary place of business in Alabama.

**B.    Transfer Of Venue**

Defendants also argue that the Northern District of Alabama is not the proper venue for this action because both defendants reside in Illinois, the agreements were executed in Illinois, and the chattel securing the promissory note is located in Illinois. Alternatively, they request a transfer to an Illinois district based on convenience.

**1.    Improper venue**

"[T]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28

18

U.S.C. § 1406(a).

Venue in a diversity action is determined in accordance with 28 U.S.C. § 1391(a), which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Plaintiff argues that venue in the Northern District of Alabama is proper because a substantial part of the events or omissions giving rise to their claims occurred within this judicial district. This court agrees. The economic resources on which the action is based were transferred from an Alabama corporation, utilizing the services of an Alabama bank. The payments were to be sent to and received by plaintiff at its principal place of business in Alabama. The note and letter of agreement were prepared at plaintiff's principal place of business in Alabama. Furthermore, the Alabama Supreme Court has noted: "For purposes of jurisdiction and venue, a cause of action for default on a note arises in the forum in which the payment is due." *Ex Parte AmSouth*

19

*Bank, N.A.*, 675 So. 2d 1305, 1308 n. 1 (Ala. 1996) (emphasis in original).

### 2.   Convenience of parties

Change of venue based on convenience is governed by 28 U.S.C. § 1404, which provides, in pertinent part:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

When considering a motion to transfer venue pursuant to §1404(a), the burden is on the moving party to establish the propriety of the transfer.  *See In re Ricoh Corp.*, 870 F.2d 570 (11th Cir. 1989). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *In re Ricoh Corp.*, 870 F.2d at 572.

Defendants maintain that this action should be transferred to the Central District of Illinois based on convenience of the parties, because both defendants reside in Illinois, the property that is the subject of the action is located in Illinois, and a substantial part of the events or omissions giving rise to claims occurred in Illinois.  Nevertheless, transferring this case to the Central District of Illinois will merely shift the inconvenience

20

from defendants to plaintiff.   Furthermore, venue is more appropriate in this court, because plaintiff's claims require a court to construe the promissory note in accordance with Alabama law.

### IV. CONCLUSION

Because defendants have minimum contacts with the State of Alabama, their motion to dismiss for lack of personal jurisdiction is due to be denied.  According due respect to plaintiff's choice of forum, the court also finds that defendants' alternative motion for transfer is due to be denied.  An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this the _18th_ day of October, 2000.

_____
United States District Judge